UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>MEDSTAR SOUTHERN MARYLAND HOSPITAL CENTER and MEDSTAR HEALTH, INC.,<br><br>Defendants. | CIVIL ACTION NO.<br><br>COMPLAINT<br><br>JURY TRIAL DEMAND |

NATURE OF THE ACTION

This is an action under the Americans with Disabilities Act of 1990, as amended (the "ADA") and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct violations of the ADA and to provide appropriate relief to Charging Party Joseph J. Greenfield, Jr.

As alleged with greater particularity below, Defendants discriminated against Charging Party in violation of the ADA, 42 U.S.C. §§ 12112(a) and (b), when they denied him hire and denied him reasonable accommodations, and they violated 42 U.S.C. § 12112(d)(3) when they conducted an unlawful medical examination.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12117(a), which incorporates by reference Title VII of the Civil Rights Act of 1964 (Title VII), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Maryland, Southern Division.

## PARTIES

3. Plaintiff, the United States Equal Employment Opportunity Commission (the Commission), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I and Title V of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a).

4. At all relevant times, Defendant MedStar Health, Inc. ("MedStar") has consistently been doing business in the state of Maryland, and has continuously had at least 15 employees.

5. At all relevant times, Defendant MedStar Health, Inc. has continually been engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12112(5), (7).

6. At all relevant times, Defendant MedStar Southern Maryland Hospital Center ("MSMHC") has consistently been doing business in the state of Maryland, and has continuously had at least 15 employees.

7. At all relevant times, Defendant MedStar Southern Maryland Hospital Center has continually been engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C. §§ 12112(5), (7).

## ADMINISTRATIVE PROCEDURES

8. More than thirty days prior to the institution of this lawsuit, Joseph J. Greenfield, Jr. filed a charge with the Commission alleging that Defendants subjected him to disability discrimination in connection with employment opportunities at MedStar Southern Maryland Hospital Center.

9. On August 26, 2025, the Commission issued to Defendants a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendants to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10. On June 12, 2026, the Commission issued to Defendants a Notice of Conciliation Failure advising them that the Commission was unable to secure from Defendants a conciliation agreement acceptable to the Commission.

11. All conditions precedent to the institution of the lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12. Defendants own and operate a hospital located in Clinton, Maryland called the MedStar Southern Maryland Hospital Center ("MSMHC").

13. Each Defendant functions as an employer of persons who perform work at MSMHC or provide shared services to MSMHC and/or Defendants function as an integrated enterprise/single or joint employer of such persons.

14. Regarding the facts alleged and claims asserted in this Complaint, each named Defendant is an employer and/or Defendants functioned as an integrated enterprise, for purposes of the ADA.

15. Charging Party Joseph J. Greenfield, Jr. ("Charging Party" or "Greenfield") is diagnosed with pulmonary hypertension.

16. On or about February 29, 2024, Charging Party applied to work for Defendants in a registrar position at MSMHC.

17. Persons working in registrar positions for Defendants function in a front-desk receptionist capacity, collect information and payment from patients, verify insurance eligibility,

and receive completed forms. The registrar position is sedentary.

18. Before he sought the registrar position, Charging Party underwent a medical procedure related to his pulmonary hypertension condition during which a pulmonary intravenous cardiac catheter, also known as a "PICC" or "PICC line," was inserted in his chest wall. Through the PICC line, medication to treat pulmonary hypertension and related symptoms or conditions is delivered. After insertion of the PICC line, Charging Party's health care provider/s cleared him to work.

19. Charging Party's PICC line did not disqualify him from a registrar position.

20. Charging Party was offered a registrar position in March 2024, and he accepted it.

21. Defendants scheduled Charging Party to start work on April 8, 2024.

22. Defendants conditioned Charging Party's employment and commencement of his employment duties on information gathered during medical examinations and inquiries made and conducted by Defendants, and they required such examinations and inquiries including, but not limited to, requiring Charging Party to undergo what they called an occupational health evaluation.

23. Defendants required Charging Party to submit a completed "pre-placement screening form" and he did so. The pre-placement screening form asked Charging Party to say whether he needed an accommodation to perform essential job functions, and he answered he may need leave for medical appointments because he has pulmonary hypertension.

24. Defendants conducted an occupational health evaluation and medical examination of Charging Party, obtained information about his medical condition and history, and obtained and exchanged information regarding disability including his pulmonary hypertension diagnosis. Defendants asked Charging Party questions about disability, including inquiries about medication and treatment he had obtained and was receiving. Defendants claimed they regarded Charging

Party as unable to perform the job, denied him medical clearance, and concluded he was not medically cleared based on disability.

25. Defendants determined Charging Party's health care provider/s had to remove his PICC line, told him of that alleged requirement, and made further medical/disability inquiries including, but not limited to, inquiring whether and, if so when, health care provider/s could or would remove it.

26. Defendants conferred internally about whether they could accommodate Charging Party by allowing him to retain the PICC line. They told him they were investigating that matter, but did not get back to him about the purported investigation or accommodation.

27. Each Defendant and/or Defendants jointly, and/or operating as an integrated enterprise, did not provide accommodations including, but not limited to, allowing Charging Party to retain the PICC line or otherwise permitting him to start work without requiring health care provider/s to first remove the PICC line and/or without requiring Charging Party to first obtain updates or information from health care provider/s about the PICC line and likelihood or advisability of removing it; medically clearing Charging Party notwithstanding his receiving treatment for disability via medication delivered intravenously and/or via the PICC line; and modifying practices, procedures, or requirements so as to enable Charging Party to work notwithstanding his disability, disability treatment status, and stage or process of care provided by health care provider/s; modifying start dates and other timetables including arranging for Charging Party to start work as a registrar, and/or in another capacity or department than originally identified, in a manner and pursuant to a timetable that would permit Charging Party and his health care provider/s to comply with Defendants' decision-making and directives that the PICC line be

removed, assuming that was appropriate as determined by the health care provider/s, and, if so, consistent with treatment and procedure timetables and availability.

28. On March 26, 2024, Charging Party asked Defendants whether he was still scheduled to start work on April 8, 2024. Defendants said Charging Party's PICC line had to be removed and whether he could work depended on health care provider/s first removing the PICC line.

29. On March 27, 2024, Defendants said it was their final decision that Charging Party's health care provider/s had to remove his PICC line, and they changed his start date to May 20, 2024, purportedly to allow for the medical procedure they claimed was required.

30. Charging Party advised Defendants he would contact his health care provider/s to make an appointment for the purpose of discussing whether the PICC line could be removed, and Defendants knew his health care provider/s had not yet determined whether they could or would remove the PICC line. Defendants were advised that Charging Party planned to confer with health care provider/s about that matter in May, and they required him to undergo further medical examinations and inquiries following such conferral.

31. On or around March 28, 2024, but no later than May 9, 2024, Defendants knew that because of their final decision that Charging Party had to have the PICC line removed, their other decision-making regarding his disability, and the conclusions they claimed to have drawn about his medical condition, Charging Party could not start working on May 20, 2024.

32. Defendants jointly, and/or operating as an integrated enterprise, failed to communicate or engage in an interactive process with Charging Party between March 28, 2024, and May 8, 2024.

33. On May 8, 2024, Defendants contacted Charging Party and claimed they sought information about whether he would start work on May 20, 2024, despite having made decisions and imposed requirements that prevented him from starting work that day.

34. The next day, Charging Party reminded them that he still had the PICC line and planned to confer with health care provider/s on May 20, 2024, to get an update about whether it could be removed. Charging Party also reminded Defendants that they had decided he could not work unless health care provider/s first removed the PICC line. Defendants did not reply.

35. On May 14, 2024, Defendants contacted Charging Party and, again, claimed they sought information about whether he would start work on May 20, 2024, despite having made decisions and imposed requirements that prevented him from starting work that day. Again, Charging Party reminded Defendants their final decision was that he could not work unless health care provider/s first removed the PICC line, and Defendants replied that was correct.

36. Later that day, Defendants contacted Charging Party again about whether he would start work on May 20, 2024. This time, they demanded that he tell them whether he would do so by the following morning. Consistent with the above-described events, without knowing whether health care provider/s could or would remove the PICC line, and facing other requirements Defendants imposed including that he undergo further medical examinations and inquiries after health care provider/s removed his PICC line (assuming they would do so), Charging Party confirmed for Defendants what they already knew – that is, he could not start working for them because he still had the PICC line and Defendants required its removal.

37. Thereafter, each Defendant and/or Defendants jointly, and/or operating as an integrated enterprise, revoked the offer of employment they had made to Charging Party, rescinded the offer, reversed the hiring decision, and/or refused or failed to hire him.

**COUNT I**
**(Disability Discrimination)**

38. The EEOC reasserts, as if fully set forth herein, the allegations in Paragraphs ¶¶ 1-37, above.

39. The above facts, and others establish Defendants discriminated against Charging Party when they denied him employment in violation of 42 U.S.C. § 12112(a).

40. Charging Party has an ADA-covered disability including his pulmonary hypertension diagnosis. Pulmonary hypertension impairs the operation of major bodily functions including circulatory, respiratory, and cardiovascular systems.

41. Charging Party was otherwise qualified for employment with Defendants, including in the registrar position, with or without accommodation.

42. Disability was a but-for cause of the adverse decisions Defendant made concerning Charging Party including, but not limited to, denying him medical clearance; concluding he was not medically cleared; requiring him to cease receiving intravenous medication for his disability; requiring his health care provider/s to remove his PICC line; and revoking or rescinding the job offer, reversing the hiring decision, and refusing or failing to hire him.

43. The effect of the practices described above has been to deprive Charging Party of rights secured to him by the ADA.

44. The unlawful employment practices complained of above were and are intentional.

45. The unlawful employment practices complained of above were and are done with malice or with reckless indifference to the federally protected rights of Charging Party.

**COUNT II**
**(Failure to Accommodate)**

46. The EEOC reasserts, as if fully set forth herein, the allegations in Paragraphs ¶¶ 1-

37, above.

47. The above facts, and others establish Defendants discriminated against Charging Party when they failed to make reasonable accommodations in violation of 42 U.S.C. § 12112(a) and (b)(5)(A).

48. The above facts, and others establish Defendants discriminated against Charging Party when they denied him employment opportunities based on the need to make reasonable accommodations in violation of 42 U.S.C. § 12112(a) and (b)(5)(B).

49. By at least March 19, 2024, Defendants were notified of Charging Party's disability by and through their knowledge of his physical impairment.

50. Accommodations were possible, as exemplified above, and such accommodations were reasonable. Defendants failed to make those accommodations, and others, that would have enabled him to start work or otherwise obtain or retain employment opportunities with Defendants.

51. Defendants failed to participate in good faith in an interactive process with Charging Party as required by the ADA.

**COUNT III**
**(Unlawful Medical Examination)**

52. The EEOC reasserts, as if fully set forth herein, the allegations in Paragraphs ¶¶ 1-37, above.

53. Defendants discriminated against Charging Party when they conducted unlawful medical examinations and inquiries in violation of 42 U.S.C. § 12112(a) and (d).

54. 42 U.S.C. § 12112(d)(3) of the ADA permits employers to require medical examinations and make medical inquiries after an employment offer is made and before commencement of employment duties, but only if they do so in accordance with the Act.

55. Defendants required medical examinations and made inquiries concerning

Charging Party that fall within the scope of § 12112(d)(3). Results of such activities were used to discriminate against Charging Party and otherwise used in a manner inconsistent with the Act, including as described herein.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining each Defendant, and each of their officers, agents, servants, employees, and all persons in active concert or participation with them, from maintaining or applying policies or practices that violate the ADA and from discriminating in violation of the Act.

B. Issue an Order compelling each Defendant to revise their policies and practices, and to require each of them to take steps necessary to prevent ADA violations.

C. Order Defendants to make whole Charging Party by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and/or appropriate front pay.

D. Order Defendants to make whole Charging Party by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E. Order Defendants to make whole Charging Party by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices complained of above, in amounts to be determined at trial.

F. Order Defendants to pay Charging Party punitive damages for their malicious and reckless conduct, as described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

JURY TRIAL DEMANDED

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street, N.E.
Washington, DC 20507

Christopher Lage
Deputy General Counsel

s/ Debra M. Lawrence
Debra M. Lawrence
Regional Attorney

s/ Kate Northrup
Kate Northrup
Assistant Regional Attorney

s/ Lindsay Sfekas
Lindsay Sfekas
Senior Trial Attorney
D. Md. Bar No. 19893
EEOC – Baltimore Field Office
George H. Fallon Federal Building
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201
Phone: (929) 506-5284
Fax: (443) 992-7880
Email: lindsay.sfekas@eeoc.gov

Dated: September 17, 2026